**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| ABDUL WAHID UBAIDAH CRUMBLIN, also known as STERLING M. CRUMBLIN, | : : : : : | |
| Petitioner, | : : | Civil Action No. 12-6068 (JMV) |
| v. | : : : | **OPINION** |
| STATE OF NEW JERSEY, *et al.*, | : : : | |
| Respondents. | : : | |

---

APPEARANCES:

Abdul Wahid Ubaidah Crumblin
100-140 Talbot Hall
168 Frontage Road
Kearny, NJ 07032
        Petitioner, *pro se*

Paula Cristina Jordao, Esq.
Morris County Prosecutor's Office
Administration & Records Building
Morristown, NJ 07963
        On behalf of Respondents

**VAZQUEZ**, District Judge

        This matter comes before the Court upon the Petition for a Writ of Habeas Corpus under

28 U.S.C. § 2254 (ECF No. 1) filed by Petitioner, an inmate confined in Talbot Hall, in Kearney,

New Jersey.  Respondents filed an Answer opposing habeas relief.  (ECF No. 20.)  For the reasons

discussed below, the Court denies the petition for a writ of habeas corpus.

## I.      BACKGROUND

On March 24, 2004, the New Jersey Superior Court Appellate Division described the

procedural history of Plaintiff's convictions and sentencing:

> On February 1, 2001, defendant pled guilty to charges arising from
> five separate indictments and one accusation for offenses committed
> on six separate dates between July 17, 1999 and October 25, 2000
> [in multiple counties].[1]
>
> . . . .
>
> Defendant received an aggregate sentence of forty years with
> sixteen years of parole ineligibility.

(ECF No. 20-15 at 2-3) (footnote added).  On direct appeal, Petitioner appealed the trial court's

denial of his motion to suppress and argued the sentence was excessive.  (*Id.* at 3.)

The Appellate Division summarized the facts adduced at the hearings on Petitioner's

motion to suppress:

> At approximately noon on Saturday, July 17, 1999, Officer Glenn
> Yanovak of the Hanover Township Police Department conducted a
> business check of the Sage Brush restaurant located at 39 Horse Hill
> Road. The restaurant property consisted of a building and a parking
> lot.  The restaurant was not open for business at the time of the
> check.  Yanovak drove to the back corner of the parking lot where
> he observed a parked Honda Civic, the only car in the lot.  He saw
> that the driver, later identified as defendant, had his seat leaned back.
> Yanovak parked his patrol car fifteen feet from the vehicle and
> started to approach on foot to investigate.  As he approached, he
> observed defendant sit up and pull up his pants.  He also saw a
> female's head pop up from defendant's lap.  Yanovak recognized

---

[1] The charges Petitioner pled guilty to included two counts of third-degree possession of heroin
with intent to distribute, N.J.S.A. 2C:35-5a(1) and 5b(3); possession of CDS with intent to
distribute while in possession of a loaded 9mm automatic handgun, N.J.S.A. 2C:39-4.1, third-
degree possession of heroin with intent to distribute within 1000 feet of school property, N.J.S.A.
2C:35-7; second-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1) and
5b(2); third-degree bail jumping, N.J.S.A. 2C:29-7; second-degree possession of CDS while in
possession of a firearm, N.J.S.A. 2C:39-4.1, and third-degree possession of CDS with intent to
distribute, N.J.S.A. 2C:35-5a(1) and 5(b)(13).

the female as Cheryl Ogden whom he had previously caught having sex for money in the same parking lot.

Yanovak radioed for backup and requested defendant's credentials. Defendant produced a New Jersey boat license and informed the officer that his driver's license was suspended.  While speaking to defendant prior to the arrival of his backup, Yanovak observed what he believed, based on seven and one half years of police experience, to be marijuana roaches and ashes in the cup holder of the center console of the vehicle.

After backup Officer Joseph Quinn arrived, Yanovak asked defendant to step out of the vehicle.  He complied and Yanovak gave the defendant his *Miranda* warnings.  Defendant advised Yanovak that he picked up Ogden from Morristown because she needed a ride, whereupon he asked her "how much it would be to get a blow job."  She responded, indicating $10, and they drove to Sage Brush. Officer Yanovak then placed defendant under arrest for soliciting prostitution and possession of marijuana.  He conducted a pat-down search and noticed that defendant had a large amount of cash on him, disbursed throughout his pants pockets.  Defendant claimed that the money was for automobile insurance.

Ogden was then arrested on the same charges and placed in Quinn's vehicle.  Quinn stood outside the vehicle near defendant while Yanovak conducted a search of the driving compartment, around the seats, and the glove compartment.  Yanovak put the marijuana roaches in an evidence bag.  In the glove compartment he found a loaded Jennings nine millimeter semiautomatic handgun.  Upon inquiry, defendant admitted that the marijuana roaches and the handgun were his.

It was a hot day and defendant, who was sweating profusely, was placed into Yanovak's vehicle, which was air conditioned.  Officer Quinn gave defendant his *Miranda* warnings, requested permission to search the trunk and informed defendant that he had the right to refuse consent.  Neither officer produced a written consent to search form for defendant's signature, even though both officers had the forms in their vehicles.  Defendant gave verbal consent to search the trunk to Officer Quinn, who relayed the consent to Yanovak. Yanovak found a gray nylon bag containing two boxes of ammunition in the trunk.  After questioning, the defendant admitted that the ammunition, which went with the gun, was his.  The vehicle was impounded.

3

Defendant and Ogden were brought to the police headquarters for processing. Defendant was given his *Miranda* warnings for a third time. During processing at police headquarters, defendant was found to have $712.60 on his person in small denominations. Ogden told the detective processing her that the money that was found was "drug money," and that defendant was a drug dealer in Morristown. The detective advised Yanovak that Ogden wished to talk to him. Ogden told Yanovak that if he gave her three cigarettes she would tell him where defendant hid his drugs in the car. After finding two cigarettes, which he gave to Ogden, Ogden told Yanovak that defendant kept drugs in the dashboard under the lip inside the glove compartment.

Meantime, the owner of the Honda Civic, Dawn Wilkens, arrived at police headquarters. Officer Mark Roddy went over the consent to search and *Miranda* warnings form with Wilkens and informed her that she had a right to refuse. Wilkens signed the consent to search form. Yanovak's subsequent search of the vehicle produced a small plastic bag with green vegetation, which he knew to be marijuana, two bundles of white powdery substance, believed to be heroin, and a marijuana cigarette. After returning to headquarters, Officer Yanovak questioned defendant who admitted that the marijuana was his but questioned how Yanovak knew the heroin was his.

At the suppression hearing, defendant challenged the consents to search. On appeal, he abandons those arguments and, for the first time, asserts that he was engaged in intimate activities similar to those associated with the home at the time Yanovak entered the parking lot and approached the vehicle and was, therefore, entitled to an attendant expectation of privacy. Defendant also argues that Yanovak had no right to enter the parking lot at the time because the restaurant was closed.

. . . .

At the time of his apprehension, defendant was parked in a far corner of a restaurant parking lot in an area where he would not ordinarily be located at a time that the restaurant was not open for business. These circumstances alone provided reasonable suspicion to conduct an investigatory stop. Moreover, defendant has no reasonable or legitimate expectation of privacy when involved in acts of prostitution. The officer properly approached the vehicle. Yanovak's observations of marijuana roaches and a known prostitute plying her trade supported a reasonable and articulable suspicion that defendant and his passenger were engaged in criminal activity sufficient to order them to exit the vehicle. After defendant

> was lawfully placed under arrest, the officers had probable cause to search the vehicle incident to a lawful arrest.  Simply put, the stop and the search, here, pass constitutional muster.

(ECF 20-15 at 4-9) (citations omitted).  The Appellate Division also found Petitioner's sentence was not manifestly excessive, unduly punitive, or an abuse of discretion.  (*Id.* at 4.)

Petitioner filed a petition for post-conviction relief and requested a hearing, which was held over multiple dates between July 28, 2005 and August 27, 2007.  (ECF Nos. 20-8, 20-9, 20-10 and 20-11.)  He raised the following ineffective assistance of counsel claims, which are the same claims he presents in his habeas petition:

> [1] Counsel improperly advised the defendant as to the degree of the offenses[;]
>
> [2] Defendant was facing a mandatory extended term and not persistent offender sentencing[;]
>
> [3] Counsel failed to argue that the court had the discretion to impose a mandatory minimum term of less than 16 years[;]
>
> [4] The plea offer was miscalculated[;]
>
> [5] Defense counsel failed to advise defendant that by withdrawing his motion to vacate the guilty plea, defendant waived most issues he wanted to preserve for appeal[;]
>
> [6] Defendant's plea to Ind. No. 00-08-0983 was coerced involuntary and based upon an untrue factual basis[;]
>
> [7] Both trial and appellate counsel failed to raise important issues regarding the motion to suppress evidence[;]
>
> [8] Based on counsel's supplemental brief and Petitioner's pro se petition, the Court should grant petition based upon cumulative error[;]

(ECF No. 20-29 at 3-4.)

Petitioner raised two additional arguments in a supplemental brief:

> Point I
>
> Counsel was ineffective as he failed to challenge the imposition of a mandatory extended term for second time offenders as the fact of [Petitioner's] prior conviction was an element of the offense which required a sentence greater than that of a first offender.
>
> Point II
>
> Counsel was ineffective as he failed to challenge the Indictment which did not allege aggravating factors.

(*Id.* at 4.)

After the hearings, the PCR Court denied relief.  (ECF Nos. 20-12 and 20-26.)  Petitioner appealed.  (ECF Nos. 20-20, 20-21, and 20-22.)  On January 11, 2011, the Appellate Division affirmed the PCR Court, stating:

> Defendant appeals from the February 19, 2008 order denying his post-conviction relief (PCR) petition.  The petition arose out of an aggregate sentence of forty years imprisonment with a sixteen-year parole disqualifier that was imposed on May 24, 2001 on multiple charges contained in seven separate indictments to which defendant had pled guilty.  The guilty plea was entered pursuant to a negotiated plea agreement, and the base term of the sentence imposed was lower than that recommended in the plea agreement.  Further, pursuant to the terms of the plea agreement, five additional indictments and various other pending complaints were dismissed. For the reasons that follow we affirm. . . .
>
> Although Judge Bozonelis had taken defendant's plea and sentenced him, Judge Ahto presided over the PCR proceedings.  After conferencing the PCR matter on the record, Judge Ahto scheduled an evidentiary hearing, which he conducted over several dates.  The judge received the testimony of defendant and the trial counsel who had represented him at the time of his plea and sentencing.  The assistant county prosecutor who had represented the State through the plea and sentencing also testified.  Defendant also presented the testimony of Janet Erdmann, who he contended was a potentially exculpatory witness with respect to one of the indictments to which he pled guilty.  Defendant contended that he furnished his trial counsel with Erdmann's name and whereabouts, as well as the

favorable information she was prepared to provide, but his trial
counsel failed to contact her.

On February 14, 2008, Judge Ahto issued a comprehensive oral
decision.   He found the testimony of defendant and Erdmann
incredible.  He credited the testimony of defendant's trial counsel
and the assistant prosecutor.  The judge concluded that on some
points raised by defendant there was no deficient attorney conduct.
On others, he found that the asserted deficiencies were corrected in
the course of the trial court proceedings and were of no
consequence.  Finally, although the judge found that some conduct
by trial counsel may have been deficient, he further found that
defendant failed to demonstrate that the outcome of the proceedings
would [not] have been any different. . . .

. . . .

We affirm substantially for the reasons expressed by Judge Ahto in
his February 14, 2008 oral decision.

(ECF No. 20-29 at 2-7.)   The Appellate Division also provided some additional comments,

discussed in the grounds for relief below.  The New Jersey Supreme Court denied certification on

July 12, 2012.  (ECF No. 20-33.)

In the present petition, Petitioner requests habeas relief based on the ineffective assistance

of trial and appellate counsel claims he raised in his PCR proceeding.   (ECF No. 1 at 5.)

Respondent argues none of Petitioner's claims have merit.  (ECF No. 20 at 27-50.)

### III.     DISCUSSION

A.     Standard of Review

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be
granted with respect to any claim that was adjudicated on the merits
in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e)(1) states:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in United States Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from Supreme Court precedent and arrived at a different result. *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (citing *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta" of the United States Supreme Court's decisions. *Williams*, 529 U.S. at 412. An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)).

If a state court order is silent on the reason for a decision on a federal claim, the following presumption applies: "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Thus, habeas courts "look through" an unexplained order to the last reasoned decision by the state court. *Id.* at 804.

The Supreme Court of the United States established the standard for determining ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. (1984). With respect to

claims of ineffective assistance of counsel under § 2254(d), "the question is not whether counsel's actions were reasonable." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* To satisfy the prejudice prong of *Strickland* when a defendant alleges counsel erroneously advised him of the consequences of pleading guilty, the petitioner must allege "that, had counsel correctly informed him . . . he would have pleaded not guilty and insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 60 (1985).

Where the alleged error is failure to investigate exculpatory evidence, the question is whether the error prejudiced the defendant by causing him to plead guilty instead of going to trial, and whether the evidence would have changed counsel's recommendation to take the plea. *Id.* Ultimately, the issue turns on whether the evidence likely would have changed the outcome of a trial. *Id.*

   B.   Analysis

Petitioner seeks habeas relief based on the claims of ineffective assistance of counsel raised in his PCR proceedings. The PCR Court denied his claims after an evidentiary hearing, and the Appellate Division affirmed primarily based on the reasons stated by the PCR Court. Therefore, on habeas review, the Court reviews both the Appellate Division and the PCR Court's denial of Petitioner's ineffective assistance of counsel claims.

   1.   Grounds One through Four

In Grounds One through Four of the petition, Petitioner asserts:  (1) counsel improperly advised him as to the degree of the offenses; (2) counsel improperly advised him he was facing persistent offender sentencing but it was actually a mandatory extended term; (3) counsel failed to

argue that the court had the discretion to impose a mandatory minimum term of less than sixteen years of parole ineligibility; and (4) the plea offer was miscalculated.  (ECF No. 20-20 at 7-16.)

Grounds One through Four all relate to defense counsel's, Allen Marra, alleged misunderstanding of the sentencing laws as applied in Petitioner's complex, multi-indictment case, and counsel's advice to accept the plea offer.  Petitioner's arguments center on the worksheets used to negotiate the original plea agreement, although the plea agreement was modified in Petitioner's favor before it was completed.  (*Id.*)

Even if Marra failed to properly explain some aspects of the complex sentencing calculation involved, Petitioner must show prejudice to meet the *Strickland* test for ineffective assistance of counsel.  The prejudice Petitioner alleges with respect to Grounds One through Four is that, rather than counsel's recommendation to agree to a fifty-year prison term with a sixteen-year stipulation of parole ineligibility, counsel should have argued for a twelve and one-third-year stipulation, the lowest available under the *Brimage* guidelines.  (*Id.* at 13.)  Petitioner asserts that because the sentencing judge actually sentenced to shorter term of imprisonment than negotiated, forty years with a sixteen-year stipulation, the judge would have been receptive to a twelve and one-third-year stipulation.  (*Id.* at 22.)

The PCR Court made the following findings.  Marra testified it was his goal to get a twelve-year stipulation.  (ECF No. 20-12 at 5.)  This suggested to the PCR Court that, contrary to Petitioner's assertion, Marra knew he could seek less than sixteen years of parole ineligibility.  (*Id.*)  Assistant Prosecutor O'Connell testified that he would never have agreed to a twelve-and-a-third-years stipulations because guns were involved, crimes were committed while the defendant was out on bail, and the defendant had used a similar modus operandi in the past, including the

presence of a gun during his crimes.  (*Id.* at 13-14.)   Petitioner was facing a maximum of 100

years in prison with a 75-year stipulations.  (*Id.* at 14.)

The Appellate Division affirmed for the reasons stated by the PCR Court but added these

statements:

> This was a "global" settlement resulting in the disposition of at least
> twelve outstanding indictments and several other criminal and motor
> vehicle complaints against defendant.  It is readily apparent that the
> parties negotiated for an overall disposition, a critical component of
> which was the mandatory minimum period of time that defendant
> would be incarcerated before being eligible for parole.  Judge Ahto's
> conclusion that, even if an argument had been made for less than
> sixteen years it would not have been granted, is supported by the
> record, and we have no occasion to interfere with it.

(ECF No. 20-29 at 11.)

The PCR Court and the Appellate Division applied the correct standard announced in

*Strickland* for analysis of Petitioner's ineffective assistance counsel claims.  Therefore, the only

question on habeas review is whether the state court's application of the prejudice prong was

unreasonable.  It was not.  There is little in the record to suggest the sentencing court would have

sentenced Petitioner to the minimum period of parole ineligibility, especially because the Assistant

Prosecutor testified he would not have agreed to such a plea in a case involving guns and crimes

committed while on bail.  Therefore, Petitioner has not established prejudice, and the Court denies

Grounds One through Four of the habeas petition.

5.    Ground Five

In Ground Five of the petition, Petitioner argues counsel failed to advise him that by

withdrawing his motion to vacate the guilty plea, he waived issues he wanted to raise on appeal.

(ECF 20-20 at 16.)  The trial court suggested, on the record, that if Petitioner went forward with

the plea, he would preserve any issues on the motion to suppress for appeal.  (*Id.* at 16.)  Petitioner

was then given the opportunity to discuss with counsel whether he wanted to withdraw his motion to vacate the guilty plea.  (*Id.*)  When they went back on the record, counsel confirmed that Petitioner was withdrawing his motion, and Petitioner said he was doing so to preserve the right to appeal *all* issues.  (*Id.*)  Therefore, Petitioner argues counsel failed in his duty to advise him that he would not preserve issues other than the motion to suppress, and that a plea constitutes a waiver. (*Id.* at 17.)

The Appellate Division, in affirming the PCR Court's denial of this claim, ruled as follows:

> defendant argues that when he agreed to withdraw his motion to vacate his plea and proceed to sentencing under the plea agreement, he was misinformed that he was waiving his right to appeal issues other than denial of the suppression motion and sentencing issues. However, defendant has demonstrated no viable appeal issues that he was precluded from presenting.  He has alluded to the Erdmann issue.  However, that issue was properly the subject of a collateral proceeding, and it was indeed fully litigated in this PCR proceeding, with a full evidentiary hearing including Erdmann's and defendant's testimony.

(ECF No. 20-29 at 11.)

The Appellate Division reasonably applied the prejudice prong of *Strickland*, finding that because Petitioner was not deprived of raising any viable appeal issue, counsel's alleged failure to fully advise him of the waiver of appeal rights did not deprive him of constitutionally effective counsel.  Therefore, the Court denies Ground Five of the petition.

6.    Ground Six

In Ground Six, Petitioner asserts his trial counsel was ineffective by failing to follow up with Petitioner's claim, as part of his motion to vacate his plea, that another person, Janet Erdmann, and not Petitioner, possessed the drugs that formed the basis of Indictment No. 00-08-0983.  (ECF No. 20-20 at 17.)  In his PCR brief, Petitioner explained:

12

> The defendant continues to protest his innocence on this particular charge.  Due to what he perceived as threats and the pressure exerted upon him by counsel to enter a guilty plea, and the perception by defendant that his attorney was interested in anything but defending him, the defendant threw in the towel and entered a guilty plea on this matter as part of a package deal.  Yet the State, in the face of evidence to the contrary, insisted on a plea, and counsel, when he became aware of the exculpatory evidence [Erdmann's affidavit accepting responsibility for the drugs] did nothing for his client.  This clearly affected the result, especially when everyone later convinced the defendant he could still raise his issues, including this one, on an appeal.

(ECF No. 20-20 at 18.)

The PCR Court noted Marra testified that he tried to find Erdmann but failed, but Petitioner knew where she was and did not tell him.  (ECF No. 20-12 at 9-10.)  Petitioner and Erdmann, according to Erdmann's testimony, were in Morris County Correctional Facility, and they were passing notes to each other.  (*Id.*; ECF No. 20-11 at 3-5.)

The PCR judge found Erdmann's testimony that the heroin was hers not credible.  (ECF No. 20-12 at 11-12.)  Erdmann testified she was in love with the defendant, and the PCR Court believed "she was going to take the weight."  (*Id.*)  Petitioner admitted at the plea hearing that the heroin was his, but he later claimed he only admitted to this on his counsel's advice.  (*Id.* at 15.)  Petitioner believed that once Marra was paid a $25,000 retainer, he lost interest in the case and did not want to go to trial.  (*Id.* at 16.)

The PCR Judge found Petitioner was not credible in matters that were crucial.  (*Id.*)  On the day of the plea, Marra and the assistant prosecutor were ready to go to trial on the first case.  (*Id.* at 17.)  The PCR Court's impression of Petitioner was that he could not be "so easily led, duped or . . . uninformed," as Petitioner's PCR testimony would suggest.  (*Id.*)

The Appellate Division added:

> the PCR court made critical credibility determinations regarding Erdmann and the events pertaining to her, which are supported by the record and to which we defer. . . Based on those determinations, even if the first *Strickland* prong was satisfied, the second was not. The record supports Judge Ahto's conclusion that the result would not have been different.

(ECF No. 20-29 at 10.)

The circumstances discussed by the PCR Court suggested Petitioner did not want anyone to know he was in the same jail with Erdmann, and that they had passed notes to each other. This information might have led a jury to conclude Petitioner and Erdmann discussed her affidavit. It was not unreasonable for the PCR Court to conclude a jury was unlikely to have believed Erdmann's testimony. Therefore, Petitioner cannot show prejudice from his counsel's failure to locate her and go to trial on the case. The Appellate Division and PCR Court reasonably applied the *Strickland* standard in denying this claim of ineffective assistance of counsel. Therefore, the Court denies Ground Six of the habeas petition.

### 7.   Ground Seven

For his seventh ground of ineffective assistance of counsel, Petitioner contends both trial and appellate counsel failed to raise issues regarding the validity of the search of the motor vehicle that Petitioner occupied at the time of his arrest. (ECF No. 20-20 at 19-21.) Petitioner's first retained counsel challenged the validity of the defendant's verbal consent to search at the time of his arrest. (*Id.* at 19.) Counsel also challenged the consent of the owner of the vehicle, which was obtained after the defendant was arrested and the owner was called to police headquarters. (*Id.*) Appellate counsel then argued the police officers' initial approach of the vehicle was unjustified. (*Id.*)

Petitioner contends counsel should have argued the officer's search of the glove box was not authorized as a plain view search and was not within the scope of a search incident to arrest.

(*Id.* at 20.) Further, counsel did not argue "the unlikelihood that a person would give a voluntary consent knowing that evidence of crime would be found." (*Id.* at 21.) Therefore, counsel's failure to argue these points likely led to denial of the motion. (*Id.*)

The PCR Judge found that Petitioner gave consent to search the vehicle, although the consent was not in writing. (ECF No. 20-12 at 18.) The owner of the vehicle gave her consent in writing. (*Id.*) In any event, the inevitable discovery rule would have led to the discovery of the gun and the contraband. (*Id.*) The prostitute who was in the car spontaneously blurted out that defendant was a drug dealer and had drugs in the glove box. (*Id.*) The hollow point bullets would have flowed from the search consented to by the owner of the vehicle. (*Id.* at 19.) The Appellate Division agreed with PCR Court's conclusion that even if counsel had presented the arguments Petitioner suggested, the State would have nevertheless prevailed under the inevitable discovery doctrine. (ECF No. 20-12 at 12.)

"Under the inevitable discovery doctrine, 'if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received.'" *U.S. v. Stabile*, 633 F.3d 219, 245 (3d Cir. 2011); (quoting *United States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir. 1998) (quoting *Nix v. Williams*, 467 U.S. 431 (1984)). The inevitable discovery doctrine allows admission of evidence where it is established that "'the police, following routine procedures, would inevitably have uncovered the evidence.'" *Id.* (quoting *Vasquez De Reyes*, 149 F.3d at 195.))

The record supports the holdings of the PCR Court and the Appellate Division that the inevitable discovery doctrine would have permitted admission of the evidence found in the car when Petitioner was arrested. The prostitute who was in the car with Petitioner "spontaneously

blurted out that the defendant was a drug dealer and had drugs in the glove box of the car." (ECF No. 20-12 at 18.) Petitioner had more than $700.00 in his pocket at the time. (*Id.*) This evidence would have supported a search warrant for the car. (*Id.*) Additionally, the owner of the car later gave written consent to search. (*Id.*) Petitioner had virtually no chance of succeeding on a suppression motion. Therefore, the PCR Court and Appellate Division reasonably denied Petitioner's ineffective assistance of counsel claim. The Court will deny Ground Seven of the habeas petition.

8.   Ground Eight

For Ground Eight, Petitioner asserts the cumulative errors of counsel resulted in his guilty plea. (ECF No. 20-20 at 21.) Petitioner contends but for counsel's errors he would have withdrawn his guilty plea, and he would have succeeded on his motion to suppress. (*Id.*)

The Appellate Division held:

> At the PCR proceeding, defendant's trial counsel testified that all of defendant's cases were straightforward and there were no viable defenses in any of them. He also testified he was prepared to go to trial in all of the cases. The assistant county prosecutor testified that he was also ready to try all the cases. Indeed, the plea agreement was finalized only after a jury panel had been brought into the courtroom to begin the first trial. Defendant presented no competent evidence of any viable defense in any of his cases. Judge Ahto's credibility determination as to the testimony of defendant's trial counsel and the assistant county prosecutor supports the conclusion that no viable appeal issues were taken away from defendant by virtue of his guilty plea.

(ECF No. 20-29 at 11-12.)

Having found no viable defenses in Petitioner's criminal cases, the Appellate Division reasonably applied the prejudice prong of the *Strickland* analysis when it rejected Petitioner's claim that cumulative errors of counsel prejudiced him because he would have been successful if he had gone to trial. In Grounds One through Four, the Court rejected Petitioner's claim that but

for counsel's errors, he would have received a twelve and one-third years-term of parole ineligibility upon his plea and sentencing.  Therefore, the Court denies Ground Eight of the habeas petition.

        9.    <u>Ground Nine</u>

The first issue in Petitioner's supplemental PCR petition is his ninth ground for relief in this matter.  Petitioner asserted:

> Counsel was ineffective as he failed to challenge the imposition of a mandatory extended term for second time offenders as the fact of his prior conviction was an element of the offense which required a sentence greater than that of a first offender.

(ECF No. 20-21 at 1.)

Petitioner explained:

> The defendant was sentenced as a repeat drug offender to a *mandatory* extended term, with a mandatory term of parole ineligibility.  Here, the fact of the prior conviction does not increase the statutory maximum sentence, and it is not just an aggravating factor in the sense of N.J.S.A. 44-1, but its existence creates a new statutory *minimum* sentence.  And while N.J.S.A. 2C:43-6(f) is labeled a sentencing statute, it is in reality creating a new substantive offense, that of being a second time drug distributor.  The new minimum penalties thus exceed the potential penalties for a first time offender.  *All others* must receive an extended term and a period of parole ineligibility.  The fact the prior conviction here requires a sentence beyond the sentence which could be imposed otherwise mandate the matter be presented to the jury.  *State v. Petrucci*, 353 N.J. Super. 454 (App. Div. 2004) (Jury must decide if its (sic) an assault firearm as mandatory minimum sentence is greater than maximum flat term.)
>
> To make matters worse in the present situation, the mandatory sentence becomes "mandatory" *solely* on the application of the prosecution.  N.J.S.A. 2C:35-12. . . . [T]he Constitutionality of the statute has not been re-evaluated in light of *Apprendi*[2] and its

---

[2] *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (holding the Constitution requires any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury).

> progeny.  *Cf. State v. Lagares,* 127 N.J. 20 (1992), *State v. Vasquez,*
> 129 N.J. 189 (1992).

(*Id.* at 3-4) (emphasis in original) (footnote omitted).

It does not appear that the PCR Court or the Appellate Division specifically addressed this claim.  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Harrington*, 562 U.S. at 98.

Ground Nine implicates Petitioner's constitutional rights under the *Apprendi* line of cases.

> [N]othing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty. Even a defendant who stands trial may consent to judicial factfinding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial. We do not understand how *Apprendi* can possibly work to the detriment of those who are free, if they think its costs outweigh its benefits, to render it inapplicable. . . .
>
> Bargaining already exists with regard to sentencing factors because defendants can either stipulate or contest the facts that make them applicable.

*Blakely v. Washington*, 542 U.S. 296, 310 (2004) (citations omitted).

Petitioner pled guilty in this matter.  (ECF No. 5.)  He waived his right to a jury and stipulated to the relevant facts.  (*Id.*; ECF No. 20-13 at 47-52.)  Moreover, Petitioner does not assert that if he had gone to trial and the issue was presented to a jury, the jury would have found he was not subject to enhanced penalties.  Therefore, Petitioner did not allege facts supporting the prejudice prong of the *Strickland* test for ineffective assistance of counsel.  The Court denies Ground Nine of the petition.

10.   <u>Ground Ten</u> (Point II)

Ground Ten of the habeas petition is the second issue Petitioner raised in his supplemental PCR petition.   Petitioner asserted his '[c]ounsel was ineffective as he failed to challenge the indictment which did not allege aggravating factors." (ECF No. 20-21 at 5.)  Petitioner cited the New Jersey Supreme Court case *State v. Fortin*, 178 N.J. 540 (2004), where "the New Jersey Supreme Court relied on the State Constitution in deciding that the sentencing aggravating factors which triggered a capital murder prosecution were indeed elements of the offense which had to be presented to the grand jury." (*Id.* at 6.)

After the New Jersey Supreme Court decided *State v. Thomas*, 188 N.J. 137 (2006), Petitioner filed a supplemental brief.   (ECF No. 20-22.)  Petitioner noted *Thomas* rejected the defendant's argument that the Sixth Amendment requires a jury to decide if he could be sentenced to a mandatory extended term and a mandatory period of parole ineligibility due to prior CDS distribution convictions.  (*Id.* at 1.)  Petitioner distinguished *Thomas* from his case:

> The defendant here is arguing that under the State constitution, the matter must first be submitted to a grand jury, and ultimately a trial jury, to determine if he is subject [to] the new mandatory minimum sentence required by the statute.  *Thomas* decides the Court and not a trial jury can make these decisions on Federal grounds and does not address the fact the statute requires a new mandatory minimum sentence, not merely [an] enhanced sentence.

(ECF No. 20-22 at 2.)

The PCR Court found it was bound by *Thomas*, and it rejected Petitioner's argument.  (ECF No. 20-12 at 18.)  *Thomas* establishes that "N.J.S.A. 2C:43–6(f) operates as a sentence enhancer on the basis of a judicial fact-finding that is authorized under *Apprendi* and *Blakely*, to wit, the finding of prior convictions."  188 N.J. at 151-52.

"[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground* that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a) (emphasis added).  Petitioner has not presented a viable federal claim in Ground Ten.  Therefore, the Court denies Ground Ten of the petition.

IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

As shown by the discussion of Petitioner's claims for habeas relief, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will deny a certificate of appealability.

V.     CONCLUSION

For the reasons discussed above, this Court denies the petition under 28 U.S.C. § 2254, and

denies a certificate of appealability.


An appropriate Order follows.


Date: February 6, 2017                          s/ John Michael Vazquez
At Newark, New Jersey                           JOHN MICHAEL VAZQUEZ
                                                United States District Judge